Geeen5 J.
delivered the opinion of the court.
This bill is brought to set up the wife’s equity to a suitable provision for herself and her children, out of her real estate — descended to her during coverture — against the husband and his creditors.
*148 The record shows, that after the marriage of the complainant to her husband, Richard H. Mitchell, the father of the complainant, Joseph Rodgers, died intestate, and that the land in controversy descended to her from him. The husband of the complainant, and his family, have been residing on the land for a number of years. The said Richard H. Mitchell is improvident, and has not the means to support his wife and children, if this land is taken away from him.
The defendants are creditors of the complainant’s husband, and have obtained judgments against him, and have levied their executions upon said land; and the complainant prays, that they be perpetually enjoined from selling the same, and that the profits thereof be set apart for the maintainance of herself and her children.
This case has been pressed with great earnestness, by the counsel for the complainant, and we have taken time to consider and examine the authorities, — anxious to afford the reliéf sought, if we could do so according to the settled doctrines of a court of Chancery.
The wife’s equity to a provision for herself and her children, at first, was held to exist, only in cases where the husband sought the aid of a court of equity to procure the possession of his wife’s fortune. Story’s Eq., sec. 1408. Afterwards it was held, and has been long settled, that it will be enforced where the wife, or her trustee brings a suit in equity for the purpose of asserting it. Story’s Eq., sec. 1414. For a long time this equity was supposed to be confined to the absolute personal estate of the wife. But it is now extended to the rents and profits of her real estate. Story’s Eq., sec. 1418; Clancy on Rights, 445.
This equity, however, has never been enforced against the husband, and his creditors, after the husband has *149 acquired possession of his wife’s property, and his title thereto has become absolute. In 2nd Kent’s Com., 140 (2nd ed.) it is said: “ So again Haviland vs. Bloom (6 Jh. Ch. Rep., 180,) the same subject came under consideration and the rule in equity was considered as settled, that the wife’s equity to a suitable provision for the maintainance of herself and her children, out of her separate estate, lying in action, was a valid right, and extended not only to property she owned dum sola, but to property descended or devised to her during coverture.” In this extract, the learned author expressly limits the wife’s equity to such provisions as might be made out of her estate lying in action; and yet, the case of Haviland vs. Bloom, has been pressed upon this court, as an authority for the decree now sought. But, on looking into that case, it appears, that it is in direct conformity to the principle above quoted from 2nd Kent’s Commentaries.
The facts are these: the husband abandoned his wife and children in 1804, and left the United States, but returned in 1816. In the interval of time, she presumed he was dead and married again. In 1814, the wife’s father died intestate, leaving a real and personal estate, of which her share was worth 2,500 dollars. After the husband’s return, he instituted ejectment suits to recover the real property so descended to her as heir, and was seeking to recover her personal property.
In this condition of things the wife filed her bill, stating these facts: — and alledging that her husband was worth nothing, and was intemperate and adulterous, and that she and her two infant children by him, had nothing but the property so descended. A divorce, a mensa et thoro, was decreed; and it was decreed also that she should hold and enjoy all the estate, real and personal, so descended *150 to her, and that her husband be perpetually enjoined from any action to recover the estate. 6 Jh. Ch. Rep., 25. Afterwards, the defendants, Myers and Bloom, caused executions to be levied on this property, on judgments which the husband, Haviland, had confessed; to enjoin which the bill was filed.
In delivering the opinion, the Chancellor said; “the claim to protection against the judgments, does not, however, rest upon the mere equity of the wife to a suitable provision out of her separate estate, notwithstanding the claim of the husband, or of any right or lien created by him. That right, as we have seen, is, of itself, sufficient to bar the pretensions of the defendants, without any previous decree appropriating the properties to the use of the wife. In this case, however, the wife obtained a decree for. a divorce from bed and board, and the court, in such case, is directed by the statute authorizing divorces, to make orders for the suitable support, and maintainance of her, and her children, out of his property.”
Thus we see, that the case of Haviland vs. Bloom, establishes nothing more than the general principle asserted in 2nd Kent’s Commentaries, in Story’s Equity Jurisprudence, and in Clancy on Rights — before referred to— namely, that the wife’s equity to a suitable provision for the maintainance of herself and her children, out of her separate estate, real as well as personal, lying in action, is a valid right and will be upheld against the husband, his alienee, or creditor. Indeed, this case, is of less wdight than many other cases on this subject; — for although it asserts this equity of the wife as a sufficient ground to protect her property against the creditor, — yet stress is laid upon the fact, that the wife had obtained a divorce from bed and board, and that the provision made *151 for her, was only such, as by the statute, in such cases, would have been proper to have made, had the estate belonged to the husband. It may be remarked too, that the Chancellor treats the debts of the creditor, as of doubtful validity and merit, — and, therefore, as greatly weakening their claim to satisfaction.
Upon this review of the case, it will be seen, that it is no authority for the application now before us. In that case, Haviland had never been in possession of the property. It had descended to his wife during his abandonment of her, and when he returned, and instituted suits for its recovery, she, during the pendency of those suits, filed her bill for a divorce, and to enjoin his said creditors: a decree for a divorce, and for the separate enjoyment of her estate had been obtained, and the debts, set up by the creditors were of doubtful validity. But in the case before us, the husband has been long in the possession of this estate and as tenant by courtesy, is entitled to a life estate therein; there has been no divorce, and the debts of the defendants are of unquestionable merit.
Upon the whole, we are constrained to say, that there is no reported case, nor is there any principle recognized by a court of Chancery, by which the decree of the Chancellor, can be sustained.
Reverse the decree and dismiss the bill.